```
 1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2
     - - - - - - - - - - - - - - - -x
 3   JANE DOE, et al.,
                                         CA No:  1:15-cv-00026-CRC
 4              Plaintiffs,              CA No:  1:15-cv-00028-CRC

 5   vs.                                 Washington, D.C.
                                         April 6, 2015
 6   GEORGETOWN UNIVERSITY, et al.,      10:06 a.m.

 7              Defendants.
     - - - - - - - - - - - - - - - -x
 8   - - - - - - - - - - - - - - - -x
     JANE DOE, 2, et al.,
 9
                Plaintiffs,
10
     vs.
11
     GEORGETOWN SYNAGOGUE-KESHER
12   ISRAEL CONGREGATION, et al.,

13              Defendants.
     - - - - - - - - - - - - - - - -x
14
     _____
15
                 TRANSCRIPT OF TELEPHONIC CONFERENCE
16        HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                     UNITED STATES DISTRICT JUDGE
17   _____

18   APPEARANCES:

19   For the Doe Plaintiffs:  STEPHEN G. GRYGIEL, ESQ.
                              STEVEN J. KELLY, ESQ.
20                            SIMA G. FRIED, ESQ.
                              SILVERMAN, THOMPSON, SLUTKIN & WHITE
21                            201 North Charles Street
                              Suite 2600
22                            Baltimore, MD 21201
                              (410) 385-2225
23                            sgrygiel@mdattorney.com

24   (APPEARANCES CONTINUED ON NEXT PAGE)

25   Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription
```

```
 1    APPEARANCES (CONTINUED):
      For the Doe 2 Plaintiffs: JOSEPH CAMMARATA, ESQ.
 2                              IRA SHERMAN, ESQ.
                                MATTHEW TIEVKSY, ESQ.
 3                              CHAIKIN, SHERMAN, CAMMARATA &
                                SIEGEL, P.C.
 4                              1232 17th Street, NW
                                Washington, DC 20036
 5                              (202) 659-8600
                                joe@dc-law.net
 6
      For Defendant Kesher      PAUL BLANKENSTEIN, ESQ.
 7    Israel Congregation:      MAURA M. LOGAN, ESQ.
                                CLAUDIA M. BARRETT, ESQ.
 8                              GIBSON, DUNN & CRUTCHER, L.L.P.
                                1050 Connecticut Avenue, NW
 9                              Suite 900
                                Washington, DC 20036-5306
10                              (202) 955-8693
                                pblankenstein@gibsondunn.com
11
      For Defendant National    EDWARD CLARK BACON, ESQ.
12    Capital Mikvah:           BACON, THORNTON & PALMER, LLP
                                6411 Ivy Lane
13                              Suite 500
                                Greenbelt, MD 20770-1411
14                              (301) 345-7001
                                ebacon@lawbtp.com
15
      For Defendant Rabbinical  SAMUEL GRONER, ESQ.
16    Council of America:       CHELSEA P. AZRAK, ESQ.
                                FRIED, FRANK, HARRIS,
17                              SHRIVER & JACOBSON LLP
                                One New York Plaza
18                              New York, NY 10004
                                (212)859-8000
19                              samuel.groner@friedfrank.com

20

21    Court Reporter:           Lisa A. Moreira  RDR, CRR
                                Official Court Reporter
22                              U.S. Courthouse, Room 6718
                                333 Constitution Avenue, NW
23                              Washington, DC  20001
                                202-354-3187
24

25
```

```
 1                    P R O C E E D I N G S
 2           THE COURTROOM DEPUTY:  Let me call the case.  This
 3   is Civil Action 15-26 and Civil Action 15-28, Jane Doe, et
 4   al. vs. Georgetown University, et al.
 5           Will the parties please identify yourselves for
 6   the record, please.
 7           MR. GRYGIEL:  Steve Grygiel, Steve Kelly, and Sima
 8   Fried for Jane Doe 1.
 9           MR. SHERMAN:  Ira Sherman, Joseph Cammarata, and
10   Matthew Tievsky for Jane Doe 2.
11           MR. BLANKENSTEIN:  Paul Blankenstein, Maura Logan,
12   and Claudia Barrett for the Kesher Israel Congregation.
13           MR. BACON:  Edward Bacon on behalf of National
14   Capital Mikvah.
15           MR. GRONER:  Samuel Groner and Chelsea Azrak on
16   behalf of the Rabbinical Council of America.
17           THE COURT:  Okay.  Good morning, everyone.
18           (Everyone greets the Court)
19           THE COURT:  Thank you for calling in.  I wanted to
20   follow up on last week's hearing and let you know what I'm
21   inclined to do, and then give you a chance to react to it.
22           It seems to me that the plaintiffs have not yet
23   met their burden to establish one of the CAFA exceptions,
24   but that they are entitled to at least some limited
25   jurisdictional discovery in order to develop further
```

1   evidence of residency.  That being said, I remain very
2   sensitive to the privacy issues at stake here so what I'm
3   inclined to do is to proceed somewhat incrementally.
4         It seems to me that we can go a long way towards
5   determining whether either the one-third or potentially the
6   two-thirds threshold has been met with two pieces of data.
7   The first would be information from the U.S. Attorney's
8   Office about the residency of the 150 or so women it says it
9   knows were videotaped and, second, information from Kesher
10  regarding the residency and potentially, if it's available,
11  the age of married women members of the congregation during
12  Rabbi Freundel's tenure there.
13        I realize that's not the entire universe of
14  material that plaintiffs would like discovery on, but I
15  think that information, coupled with the data on converts
16  that the defendants have already submitted, I think that
17  there's a pretty good chance that with that information the
18  Court would be able to make some informed conclusions about
19  the residency of potential class members.  I think this
20  approach also has the benefit of avoiding the need and cost
21  of depositions and, you know, production and review of
22  emails and appointment data that may, at the end of the day,
23  not result in much useable data.
24        With respect to the U.S. Attorney's Office
25  records, it seems to me you can proceed or the plaintiffs

1   can proceed via a Rule 45 subpoena for documents sufficient
2   to show the state of residency, and that's all.  Not names,
3   not addresses, no other identifying information of the 150.
4              You know, I don't know how the U.S. Attorney's
5   Office will react to that.  They may well resist it, but
6   frankly I don't think that they would have much of a grounds
7   to assert a claim of any sort of law enforcement privilege
8   over simply the residency data.  And, you know, who knows?
9   If you provide them a transcript of this proceeding, they
10  may well be willing to write you a letter or to do this on a
11  more informal basis.
12             With respect to the congregation records, it seems
13  to me that, you know, this is a single interrogatory or a
14  single document request for records sufficient to show the
15  state of residency and potentially the age of married women
16  of the -- married members of the congregation.
17             What I would envision is a fairly short time
18  period for accomplishing this discovery and then renewing
19  the plaintiffs' remand motion with a supplemental pleading
20  of some sort.  You know, I would be interested in your
21  views, but I would envision a period of not less than -- or
22  not more than 30 days to accomplish all this.
23             MR. SHERMAN:  This is Ira Sherman, Your Honor.
24  I'm with Jane Doe 2, and I have a question.
25             THE COURT:  Okay.

1          MR. SHERMAN:  With regard to the discovery to
2  Kesher, do you anticipate that the plaintiffs would be able
3  to ask residency per year without -- so that it accumulates
4  from 2005?  Because the class begins when Rabbi Freundel
5  took over the administration of the mikvah, so we would need
6  to get it for each year -- each of the covered years.
7          MR. BLANKENSTEIN:  Your Honor, this is Paul
8  Blankenstein; counsel for Kesher.
9          THE COURT:  Yes.
10         MR. BLANKENSTEIN:  If I could speak to that?  The
11 issue with regard to the residency in connection with the
12 one-third or two-thirds has to do with the current residency
13 of members of the class who are residents of D.C., not going
14 back to 2005.  The issue is -- under the statute is whether
15 or not one-third or more or two-thirds or more are currently
16 -- of the class members are currently residents of D.C., or
17 citizens of D.C., to be more precise.
18         So going back historically doesn't address the key
19 question under CAFA with regard to the exception.
20         THE COURT:  Well, it's not dispositive, but that
21 does not mean that it is not probative.  Would you agree
22 with that?
23         MR. BLANKENSTEIN:  I'm not sure what it would be
24 probative of, Your Honor, if the question is whether or not
25 one-third of the class members are currently residents of

1  D.C. or two-thirds are residents of D.C., how the
2  citizenship of Kesher's membership back in 2005 would speak
3  to that issue.
4         THE COURT: Wouldn't that help you? Isn't it more
5  likely that a 2005 member would no longer be a resident of
6  D.C.?
7         MR. BLANKENSTEIN: That may well be the case, but
8  that's a question of the number of who are the members of
9  the class as opposed to who are the current residents of
10 D.C. for the purposes of the exception.
11        MR. GRYGIEL: This is Steve Grygiel, I'm sorry.
12        THE COURT: Go ahead.
13        MR. GRYGIEL: I was just going to ask them to find
14 out if the question is one of burdensomeness. If the
15 records are kept on an annual basis, it strikes me as
16 probable that they're easily produced on the basis that
17 Mr. Sherman, I think, correctly identified going back to
18 2005 because, as the Court correctly noted, this may not be
19 dispositive, but it could certainly be probative, for
20 example, of the turnover rates in the affidavits, and the
21 congregation has already made some points as to this in
22 their submissions already.
23        THE COURT: All right. I will let the plaintiffs
24 at least explore residency back to 2005, and if there is a
25 burdensomeness -- if the documents don't exist, they don't

1  exist, or if they would be overly burdensome to produce, the
2  plaintiffs can -- excuse me, the defendants can lodge those
3  objections.  Okay?
4        Is there anything else that that approach either
5  overlooks, or is there some nuance that will complicate
6  matters?
7        MR. BLANKENSTEIN:  Your Honor, again, Paul
8  Blankenstein for Kesher.
9        THE COURT:  Yes.
10       MR. BLANKENSTEIN:  We will review the plaintiffs'
11 document request or interrogatories appropriately, and if
12 there are any objections, we will -- any reasonable
13 objections to their requests, we will so advise the Court.
14       THE COURT:  Okay.
15       MR. CAMMARATA:  Your Honor, this is Joseph
16 Cammarata on behalf of Jane Doe 2.
17       With respect to your ruling that you anticipate
18 the period of discovery not to take more than 30 days, I
19 would ask that the Court set a rapid response.  If there are
20 any objections, let them be stated in five days, and that if
21 there's any -- going to be any formal response, that it be
22 provided in 15.
23       This is -- these requests are not new.  The Jane
24 Doe defendants have served discovery by way of a written
25 request and subpoena to all of the defendants asking for

1    information to help identify the members that participated

2    in the use of the mikvah.

3            So this has been outstanding, and it's been

4    something that has been sought by the plaintiffs for months.

5    So I think an expedited objection, to the extent that there

6    is one, in the response time would be appropriate.

7            THE COURT:  That's fair.  To the extent that your

8    request is targeted and limited, that will facilitate, I

9    would assume, A, the production of the documents, as well as

10   the resolution of any objections.  Okay?

11           MR. BLANKENSTEIN:  Your Honor, Paul Blankenstein

12   for Kesher.  The president of Kesher is out of the country

13   and will be out for another two weeks, so that type of

14   schedule really doesn't work for us.

15           MR. CAMMARATA:  I don't know that the president of

16   the organization is actually the custodian of the records.

17   I would tend to doubt it, but I'm not sure what the

18   president would have to do with the production of records

19   relating to membership rolls.

20           MR. BLANKENSTEIN:  Ms. Jakabovics was the

21   declarant in connection with our opposition to the motion to

22   remand, and she is the one who will review those records,

23   and I don't think five days for an objection is reasonable

24   in the circumstances.

25           THE COURT:  Well, look, start preparing the

1   documents.  I would envision that the congregation would
2   have a membership list or a mailing list, correct?
3              MR. BLANKENSTEIN:  I believe so.
4              THE COURT:  Okay.  That cannot be too difficult to
5   compile.  Okay?
6              MR. BLANKENSTEIN:  I guess the question would be
7   how far back those records go; and to the extent of the
8   burdensomeness, to go back to 2005 to identify the members,
9   female members and their ages.
10             THE COURT:  I'm not envisioning any independent
11  research here.  I mean, it seems to me that there are
12  current -- and if there are current and historical
13  membership lists available, that's relevant to our inquiry.
14  I'm not asking you to call people or to go out and, you
15  know, put together records from multiple sources in order
16  to, you know, create this information in the first instance.
17             MR. BLANKENSTEIN:  Your Honor, you know, we will
18  do that, but if we can have some relief from the timetable
19  here, we would appreciate it much.  If rather than five days
20  for the objections, ten days would work.
21             THE COURT:  Okay.  We'll come up with a schedule
22  that makes sense and put it in an order.  Okay?
23             MR. BLANKENSTEIN:  Thank you, Your Honor.
24             MR. CAMMARATA:  Your Honor, Jane Doe -- Joe
25  Cammarata again.  With respect to the pieces of discovery

1    related to the U.S. Attorney.
2         THE COURT:  Yes.
3         MR. CAMMARATA:  Determining the residency of 150
4    women, I'm not sure that that captures completely the
5    residency of all of the converts because there may have been
6    -- although they identified 150 women, the images of, let's
7    say -- I'm totally making this up -- 250 women may have been
8    captured on the videotape, but they've only been able to
9    identify a smaller subset.  So if there's an opportunity to
10   explore converts through one of the defendants or Rabbi
11   Freundel himself, in terms of his understanding of what the
12   numbers were, that might be helpful.
13        THE COURT:  Well, it might be, but as I said, I
14   want to proceed incrementally, and let's -- these seem to me
15   to be the two most readily available sources of information
16   that are relevant to the inquiry.  And we don't need an
17   exact fit, but we need, you know, a better basis than we
18   have now to draw conclusions about the one-third and two-
19   thirds.  So we're going to limit it to the two categories
20   that I discussed.  Okay?
21        MR. CAMMARATA:  Yes, Your Honor.
22        THE COURT:  Okay.  All right.  Anything else?
23        MR. GRYGIEL:  Not from Jane Doe 1, Your Honor.
24   Thank you.
25        MR. SHERMAN:  Your Honor, I just have a

```
 1     clarification -- this is Ira Sherman -- if I may, because
 2     I'm just confused about how -- what the Court had in mind in
 3     terms of the incremental nature of the discovery.  In the
 4     event -- in what event does the Court foresee that the
 5     discovery might proceed beyond this?  I mean, I just want to
 6     -- I'm just trying to get an understanding, if possible,
 7     about, you know, really what the value could be and how we
 8     could -- what we're looking for going forward.
 9              THE COURT:  Well, I'll know it when I see it, I
10     think is the short answer to that.
11              MR. SHERMAN:  Okay.  I've heard that expression
12     before.  Okay.  Thank you, Your Honor.
13              THE COURT:  Okay.
14              Okay.  Thanks very much, everyone.  We'll get
15     something out.
16                     (Whereupon the hearing was
17                      concluded at 10:21 a.m.)
```

**CERTIFICATE OF OFFICIAL COURT REPORTER**

I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 10th day of April, 2015.

/s/Lisa A. Moreira, RDR, CRR
Official Court Reporter
United States Courthouse
Room 6718
333 Constitution Avenue, NW
Washington, DC 20001