IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JANE DOE 2, AND ALL OTHER CLASS MEMBERS AS DEFINED HEREIN,** | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **THE GEORGETOWN SYNAGOGUE - KESHER ISRAEL CONGREGATION, et al.** | ) ) ) ) | Case. No. 1:15-cv-00026 |
| Defendants. | ) ) ) | |
| **JANE DOE 2, AND ALL OTHER CLASS MEMBERS AS DEFINED HEREIN,** | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **THE GEORGETOWN SYNAGOGUE - KESHER ISRAEL CONGREGATION, et al.,** | ) ) ) ) | Case. No. 1:15-cv-00028 |
| Defendants. | ) ) ) | |

**JANE DOE 2 PLAINTIFFS' REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF ALL DEFENDANTS IN OPPOSITION TO PLAINTIFFS' MOST RECENT MOTIONS FOR REMAND**

COME NOW the Jane Doe 2 Plaintiffs, and hereby reply to the Memorandum of Points and Authorities of All Defendants in Opposition to Plaintiffs' Most Recent Motions for Remand ("Memo."), insofar as the Memo. responds to Jane Doe 2 Plaintiffs' Supplement to Motion to Remand Case and/or to Stay Case Except for Discovery Regarding Class Membership. Of the class members who have **actually been identified and whose citizenship has been**

**substantiated**, significantly more than one-third are District of Columbia citizens. Of the remaining class members whose citizenship is unsubstantiated, who are the types of class members most likely to reside outside of the District of Columbia, these persons comprise only a small fraction of the total class.

Plaintiffs explain further, as follows:

### I. THE COURT SHOULD EVALUATE THE CITIZENSHIP OF THE ENTIRE PROPOSED CLASS – NOT THE SPECULATIVE CLASS PROPOSED BY DEFENDANTS.

Jane Doe 2 Plaintiffs' Complaint defines the class (at paragraph 25) as "[a]ny and all women who used any portion of the mikvah . . . at any time since 2005 to the present." Apparently concerned that at least one-third of the proposed class members were D.C. citizens when the action was filed, Defendants attempt to artificially narrow the subject of the Court's review to women who were actually video-recorded by Bernard Freundel. For the first time, Defendants advance this position on the ground that the Jane Doe 2 Plaintiffs will be unable to certify the entire proposed class.[1]

Defendants' invitation to speculate about the outcome of a motion for certification before Jane Doe 2 Plaintiffs have moved for such relief is contrary to the plain text of CAFA, which explicitly states that before certification, when determining citizenship for the purpose of reviewing diversity jurisdiction, the Court should look at the **proposed** class, not the class that might hypothetically be certified in the future. The CAFA exceptions to federal jurisdiction,

---

[1] This argument was not made in Defendants' earlier Opposition to Jane Doe 2 Plaintiffs' Motion to Remand Case and/or to Stay Case Except for Discovery Regarding Class Membership and should not be considered. Defendants should not be given free rein to conceive entirely new arguments that are not based upon the new discovery responses regarding citizenship of class members and therefore could have been introduced earlier in this litigation.

§§ 1332(d)(3) and (4), direct the Court to look at the citizenship of the "members" of the class action.  Subsection (d)(1)(D) defines "class members" to "mean[] the persons (named or unnamed) who fall within the definition of the **proposed or certified class** in a class action."  Given that no class has been certified, the Court must base its citizenship determination upon the "proposed" class here.  Notably, while the subsection authorizes the Court to look to the class that is actually "certified," the subsection does **not** authorize the Court to speculate about a hypothetical class invented by Defendants to improperly retain federal jurisdiction.  But that is exactly what Defendants are inviting the Court to do here.

Subsection (d)(8) confirms that the Court need not wait until after ruling on certification to determine whether diversity jurisdiction is appropriate.  This subsection states that § 1332(d) "shall apply to any class action before or after the entry of a class certification order by the court."  Indeed, ordinarily, the Court should determine its jurisdiction before ruling upon class certification.  *See Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 395 (3d Cir. 2004).

In conclusion, CAFA establishes that the Court should measure citizenship by reference to the members of the class proposed in Jane Doe 2 Plaintiffs' Complaint or the class that is ultimately certified.  Defendants provide no authority for the proposition that the Court should instead attempt to predict the class that would hypothetically be certified, before the issue has been put before the Court.  The Court at this juncture should not be drawn into a debate as to the merits of class certification before a motion has even been filed.  Furthermore, Defendants' arguments – unsupported by citations to legal authority – are plainly inadequate to show that Jane Doe 2 Plaintiffs' proposed class is not certifiable.[2]

---

[2] Defendants argue that Plaintiff Jane Doe 2 cannot serve as a representative for all class members because allegedly she was video-recorded while other potential class members may not have been recorded.  First, neither Plaintiff Jane Doe 2 nor her counsel have seen evidence to

## II. BASED UPON THE EVIDENCE IN THE RECORD, THE COURT SHOULD INFER THAT SIGNIFICANTLY MORE THAN ONE-THIRD OF THE CLASS MEMBERS WHO WERE MEMBERS OF DEFENDANT KESHER ISRAEL'S AND OTHER LOCAL CONGREGATIONS, WERE D.C. CITIZENS.

The vast majority of members of Plaintiff Jane Doe 2's proposed class are married Orthodox Jewish women; as Defendant National Capital Mikvah, Inc. itself has admitted, the "primary purpose" of the *mikvah* is to serve married women undergoing the family purity ritual.

---

verify this is so (nor has the Court), so it cannot be determined at this juncture whether Plaintiff Jane Doe 2 was or was not recorded.  Second, even assuming *arguendo* that Plaintiff Jane Doe 2 was video-recorded, she still may be able to serve as a representative for potential class members who were not recorded.  Third, again assuming *arguendo* that Plaintiff Jane Doe 2 was video-recorded, Jane Doe 2 Plaintiffs have the ability and intent to amend their Complaint to add at least one new class representative who (upon information and belief) was not video-recorded, which would answer Defendants' argument on the merits.  Thus the Court cannot declare at this juncture that the proposed class is not certifiable, before a motion has even been filed.

In addition to asserting that the class is not certifiable, Defendants casually suggest that "it is not clear that [class members not video-recorded] have sustained any legally cognizable injury." The Court should ignore this conclusory assertion, as it is made without any citation to authority. The Court should also ignore this suggestion for some of the same reasons the Court should not attempt to guess at the outcome of certification: Defendants have not moved to dismiss the portions of the Complaint that assert negligence claims on behalf of the class members who were not video-recorded, although Defendants could have filed such a motion.  And even if the Defendants had filed such a motion, the Court should defer considering such a motion until determining its own jurisdiction. *See Abdale v. N. Shore-Long Island Jewish Health Sys.*, 2014 U.S. Dist. LEXIS 8881, *3-4 (E.D.N.Y. June 30, 2014) (declining to consider motion to dismiss until after determining applicability of CAFA exceptions to diversity jurisdiction); *see also H.R. v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 675 n.2 (S.D. Ohio 2014) ("The motion to remand must be resolved before the motion to dismiss, because if remand is appropriate, then the state court should decide the motion to dismiss."); *McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, 642 (S.D.W.V. 2012) ("When, as here, a motion to remand and a motion to dismiss under Rule 12(b)(5) and 12(b)(6) are made, it is ordinarily improper to resolve the motions to dismiss before deciding the motion to remand.").  Finally, class members who were not video-recorded have a viable cause of action against Freundel (and thus his employers) based on the fact that Freundel negligently caused these class members to **fear** that he had video-recorded them. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011) (defendant may be liable for negligent conduct that has the foreseeable effect of causing plaintiff severe emotional disturbance, where defendant has a relationship with plaintiff that implicates plaintiff's emotional well-being).  The Court acknowledged the viability of this theory during the March 31, 2015 courtroom hearing on the Jane Doe and Jane Doe 2 Plaintiffs' requests to remand their respective cases.

*See* Dkt. No. 27 at p. 2 n. 1, Jane Doe 2 Plaintiffs' Reply Memorandum in Support of Remand and/or To Stay Case Except for Discovery Regarding Class Membership ("Jane Doe 2 Plaintiffs' Original Reply Memorandum").  The majority of these class members, in turn, are or were members of Defendant Kesher Israel's congregation, and Defendants present no evidence – just bare speculation – to suggest otherwise.

Defendants do not question Jane Doe 2 Plaintiffs' calculation that for at least 42.2% of the married female members of Defendant Kesher Israel's congregation, their last known residence was in D.C.  This figure is based on Defendants' own evidence, and conservatively assumes the truth of Defendant Kesher Israel's attestation that dozens of women who last resided in D.C. according to its own membership lists have actually moved out of the District.  *See* Subpart (1) of Supplemental Residency Information contained in its Response to Plaintiffs' First Set of Interrogatories (*Exhibit B* of Jane Doe 2 Plaintiffs' Supplement to Motion to Remand Case and/or to Stay Case Except for Discovery Regarding Class Membership).

Residency in a state is ***prima facie* evidence** of domicile, when determining diversity jurisdiction.  *Williams v. Wash. Post Co.*, 1990 U.S. Dist. LEXIS 7984, *3 (D.D.C., June 28, 1990); *accord Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (in determining diversity jurisdiction under CAFA, "[evidence of a person's place of residence . . . is prima facie proof of his domicile"); *see also Anderson v. Watt*, 138 U.S. 694, 702 (1891) ("The place where a person lives is taken to be his domicil [sic] until facts aduced establish the contrary . . . ."); *Pace v. District of Columbia*, 135 F.2d 249, 251 (D.C. Cir. 1943) ("The presumption of continuance of domicile of origin has given way to the counter-presumption of domicile in the territory in which one is resident until the contrary has been demonstrated.").

Surely, Defendants do not contend that Jane Doe 2 Plaintiffs must interview each and every class member to establish her intent to remain indefinitely in D.C.  In fact, less than four weeks ago, **Defendant Kesher Israel *agreed* with Jane Doe 2 Plaintiffs** that, "[i]n attempting to assess the citizenship of proposed class members, **the Court will of course have to rely on the presumption that one's state of residency is her domicile**."  Dkt. No. 38, Objections of Defendant Kesher Israel to Plaintiffs' First Set of Interrogatories and Request for Production of Documents at 5 n.4 (emphasis added).  Furthermore, Defendants implicitly adopt Jane Doe 2 Plaintiffs' view, when discussing the domiciles of university students, in the Memo. at p. 17.

In this case, however, the evidence of citizenship is even stronger than the fact of residency alone.  Jane Doe 2 Plaintiffs are not merely relying upon the fact of residency, but also the additional fact that for each congregation member whose last known residency was D.C., **in that same year she was also a member of Defendant Kesher Israel's congregation, at a synagogue located in D.C.**  This additional fact is strongly indicative of an intent to indefinitely remain in D.C., which establishes domicile.[3]  *See Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (5th Cir. 2010) (church membership indicative of domicile); *see also Mayer Brown LLP v. Duclich, Inc.*, 2013 U.S. Dist. LEXIS 28748, *4 (D.D.C., March 4, 2013) (club membership indicative of domicile).

In opposition to the fair inference that residency indicates domicile, Defendants present no evidence, but instead cite case law from outside this circuit, and which is distinguishable.  *See* Memo. at p. 10.   In none of the cases cited by Defendants were there indicia of domicile as strong as membership in a local religious congregation, as is true in this case.

---

[3] Defendants attempt to confuse the inquiry by directing the Court's attention to "permanent residency."  However, domicile is established by intent to reside indefinitely, not permanently.

Most of the cases cited by Defendants are further distinguishable on other grounds: *Mondragon v. Capital One AutoFinance*, 736 F.3d 880 (9th Cir. 2013) was decided on the basis that the party moving for remand failed to provide **evidence** of class citizenship, and merely relied upon the definition of the class itself. *Id.* at 884. *Mondragon* left open the possibility that evidence of residency, in and of itself, may constitute *prima facie* evidence of domicile. *Id.* at 886. In *Hart v. Rick's NY Cabaret International, Inc.*, 967 F. Supp. 2d 955, 966 (S.D.N.Y. 2014), the class members were exotic dancers who, the court noted, were particularly likely to be transient or itinerant workers, and thus their last-known addresses were of little value. Similarly, in *Lancaster v. Daymar Colleges Group, LLC*, 2012 WL 52449, 2012 U.S. Dist. LEXIS 19946 (W.D. Ky. Feb. 15, 2012) and *Wiggins v. Daymar Colleges Group, LLC*, 2012 WL 525449, 2011 U.S. Dist. LEXIS 124401 (W.D. Ky. Feb. 15, 2012), the class members were university students who, as Defendants have noted, are particularly likely to be transient. *See* Defendants' Memo. of Points and Auths. in Opp. To Plaintiffs' Mot. for Remand or, in the Alternative, for Limited Jurisdictional Discovery at p. 18-19, filed in *Jane Doe v. Kesher Israel*, Case No. 1:15-cv-00026.

Based on the foregoing, for each and every congregation member whose residency was in D.C. during her last year of membership in Defendant Kesher Israel's congregation, the Court should find that the member's domicile was also D.C., in that same year.

Defendants assert that these same women may have adopted new domiciles since they left Defendant Kesher Israel's congregation. However, this circuit follows the rule that domicile "once acquired is presumed to continue until it is shown to have been changed." *Shilkret v. Helvering*, 138 F.2d 925, 927 (D.C. Cir. 1943); *accord Anderson*, 138 U.S. at 702; *Agee v. Bush*, 1996 U.S. Dist. LEXIS 22934, *8 (D.D.C., August 26, 1996). For each and every congregation

member who last resided in D.C. and thus (based the evidence in the record) was domiciled here, there is no evidence that her domicile changed before this action was filed.

There is no cause for the Court to speculate. The evidence in the record demonstrates that at least 42.2% of the married female members of Defendant Kesher Israel – who comprise the majority of class members – were domiciled in D.C., and continued to be up until this action was filed.

### III. THE PREDOMINANCE OF LOCAL CONGREGATION MEMBERS WITHIN THE CLASS DEMONSTRATES THAT MORE THAN ONE-THIRD OF CLASS MEMBERS WERE D.C. CITIZENS WHEN THE ACTION WAS FILED. OTHERWISE, THE COURT SHOULD ORDER THE DEPOSITION OF BERNARD FREUNDEL.

As noted in the Supplement, Jane Doe 2 Plaintiffs are not merely relying upon the fact that at least 42.2% of the Defendant Kesher Israel's married female congregation members since 2005 were D.C. citizens. Likely same percentage of unmarried female members who used the mikvah were D.C. citizens, and the same is true of members of other D.C. congregations who used the mikvah. This is because the primary reason that a woman undergoing family purification would select a mikvah not affiliated with her own congregation, is geographical proximity. Accordingly, women who resided outside of D.C. certainly used the mikvah at substantially lower rates than those who resided in D.C.

Against this, Defendants assert that the sub-groups of students, and "visitors," bring the rate of D.C. citizenship below one-third. Yet there is **no evidence** that these sub-groups are large enough to preclude remand.[4] Jane Doe 2 Plaintiffs have presented evidence of hundreds of

---

[4] The Sentencing Memorandum, quoted in the Memo. at pages 16-17, is not good evidence of the total number of university students who used the mikvah. It is ambiguous whether the quoted portion of the Sentencing Memorandum means that "groups" of "students" used the mikvah, as opposed to "groups of women" that **included** students. Furthermore, the Sentencing

women who used the mikvah and the percentage of that cohort who were D.C. citizens.  The Court should not speculate to find less than one-third of the class members were D.C. citizens on the basis of other possible class members whose number is totally unknown.  As set forth in Jane Doe 2 Plaintiffs' original Reply Memorandum, the estimated number of Towson users is only approximately 15, and there is no evidence whatsoever to suggest that out-of-town visitors comprise any appreciable number of the *mikvah* users.

However, as noted in the Supplement, if the Court is concerned by the sub-group of class members who were university students, then the sensible step is to order the prompt deposition of Freundel.  There is no down-side, because Freundel will be deposed even if this case proceeds in federal court, and as jurisdictional discovery it is extremely limited.  Deposing Freundel will likely reveal to the Court the number of student and out-of-town visitors who attended the mikvah, as Freundel supervised the mikvah and had knowledge of its users.  Freundel's deposition would enable the Court to determine what portion of the total class consists of university students and out-of-town visitors, by establishing the numbers of each who used the mikvah.  If, as Plaintiffs have argued, that portion is small in comparison to the local congregation members and converts, then this would confirm that more than one-third of the class members are D.C. citizens.

---

Memorandum does not define how large or how many were these "groups."  Finally, the Sentencing Memorandum is a brief, not evidence.

WHEREFORE, Plaintiffs respectfully request that the Court remand this case to the Superior Court for the District of Columbia or, in the alternative, stay the case except to allow the deposition of Bernard Freundel.

        */s/ Matthew W. Tievsky*
Ira Sherman, Esquire
D.C. Bar No. 212175
Joseph Cammarata
D.C. Bar No. 389254
Allan M. Siegel
D.C. Bar No. 447705
Matthew W. Tievsky
D.C. Bar No. 1004955
1232 17th Street, N.W.
Washington, D.C. 20036
Tel: (202) 659-8600
Fax: (202) 659-8680
sherman@dc-law.net
joe@dc-law.net
matthew@dc-law.net
Attorneys for Plaintiffs

*/s/ Jeremy Heisler*
Jeremy Heisler, Esquire
(Admitted *pro hac vice* on March 31, 2015)
David Sanford, Esquire
Sanford Heisler Kimpel, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of Jane Doe 2 Plaintiffs' Reply to Memorandum of Points and Authorities of All Defendants in Opposition to Plaintiffs' Most Recent Motions for Remand, was served on May 14th, 2015, by the Case Management / Electronic Case Files system, upon:

    Edward Clark Bacon
    Patricia Maureen Thornton
    Bacon, Thornton & Palmer, LLP
    Capital Office Park
    6411 Ivy Lane
    Suite 500
    Greenbelt, MD 20770

    Paul Blankenstein
    Maura McCormick Logan
    Claudia M. Barrett
    Gibson, Dunn & Crutcher, LLP
    1050 Connecticut Avenue NW
    Washington, D.C. 20036

    Chelsea P. Azrak
    Evan T. Barr
    Samuel Groner
    Fried, Frank, Harris, Shriver
     & Jacobson LLP
    One New York Plaza
    24th Floor
    New York, NY 10004

                                    */s/ Matthew W. Tievsky*
                                      Matthew W. Tievsky